UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CASEY PERRY #244528,

       Plaintiff,                                Hon. Janet T. Neff

v.                                                  Case No. 1:14 CV 1141

COREY GRAHN,

       Defendant.

_____/

### REPORT AND RECOMMENDATION

This matter is before the Court on Defendant's Motion for Summary Judgment. (Dkt. #32). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendant's motion be **granted** and this action **terminated**.

### BACKGROUND

Plaintiff initiated this action on November 4, 2014, against nurse practitioner Corey Grahn. Plaintiff later submitted an amended complaint in which he asserts, in relevant part, the following.

On September 21, 2012, Plaintiff was examined by Defendant Grahn for treatment of his diabetes and related impairments. (PageID.51 at ¶ 6). Plaintiff reported that he was experiencing severe pain in his lower extremities caused by diabetic neuropathy. (PageID.51 at ¶ 7; PageID.53 at ¶ 11). Grahn failed to provide Plaintiff with appropriate medical treatment. (PageID.51 at ¶¶ 6-7). Specifically, Grahn failed to provide Plaintiff with medication to relieve his lower extremity pain.

(PageID.51 at ¶ 7). Plaintiff subsequently submitted kites requesting medical treatment from Defendant Grahn.[1] (PageID.54 at ¶ 12). These requests for treatment were ignored. (PageID.54-55 at ¶¶ 12-15).

On January 14, 2013, Plaintiff submitted a request to Health Care Services requesting that his "Diabetic Snack Bag" be re-issued. (PageID.55 at ¶ 16). Plaintiff later received a response from Defendant Grahn stating that Plaintiff's snack bag "will not be renewed per MSP orders." (PageID.55 at ¶ 16). Grahn denied Plaintiff's request for a diabetic snack bag for improper retaliatory purposes. (PageID.57 at ¶ 19). Defendant's actions also constitute medical malpractice and negligence. (PageID.57 at ¶ 19). On March 14, 2013, Registered Dietician Ron Monroe informed Plaintiff that his request for a diabetic snack bag was denied because Plaintiff refused to take his insulin as directed. (PageID.58 at ¶ 20). Specifically, Monroe stated, "there is no medical necessity to provide additional calories and carbohydrates as an evening snack when grievant continues to practice non-compliance." (PageID.58 at ¶ 20). Defendant Grahn, on an unspecified date, cancelled Plaintiff's Accu-Check glucometer "without medical cause." (PageID.61 at ¶ 24). Grahn undertook this action as retaliation for "grievances against him and his staff." (PageID.61 at ¶ 24).

Plaintiff asserts that Defendant Grahn violated his Eighth Amendment right to be free from cruel and unusual punishment in the following ways: (1) failure to provide appropriate medical treatment; (2) refusing his request for a diabetic snack bag; and (3) cancelling his glucometer. Plaintiff also asserts that Defendant Grahn violated his First Amendment right to be free from unlawful retaliation by refusing his request for a diabetic snack bag and cancelling his glucometer. Plaintiff seeks declaratory, injunctive, and monetary relief. Defendant Grahn now moves for summary judgment.

---

[1] Plaintiff fails to allege, however, that Defendant Grahn ever received or was aware of these subsequent requests for treatment.

**SUMMARY JUDGMENT STANDARD**

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *see also*, *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The fact that the evidence may be controlled or possessed by the moving party does not change the non-moving party's burden "to show sufficient evidence from which a jury could reasonably find in her favor, again, so long as she has had a full opportunity to conduct discovery." *Minadeo*, 398 F.3d at 761 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)).

Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini*, 440 F.3d at 357 (citing *Anderson*, 477 U.S. at 247-48; *Celotex Corp. v. Catrett*, 477 U.S. at 324). While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, *see Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *Minadeo*, 398 F.3d at 761, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same).

Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

**I.        Retaliation**

As noted above, Plaintiff alleges that Defendant Grahn: (1) refused his request for a diabetic snack bag and (2) cancelled his glucometer. Plaintiff alleges that Grahn undertook these actions as retaliation for grievances which Plaintiff previously filed against Grahn. Because Plaintiff is proceeding as a pauper in this matter, his claims are subject to dismissal if they fail to state a claim upon which relief can be granted. *See* 28 U.S.C. § 1915(e)(2) ("the court shall dismiss the case at any time if the court determines that. . .the action or appeal. . .fails to state a claim on which relief may be granted").

To avoid dismissal for failure to state a claim, Plaintiff must allege in his complaint *facts* sufficient to "give the defendant fair notice of what the. . .claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiff must likewise articulate facts sufficient to allege a "plausible claim for relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." If the complaint simply pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* As the Court further observed:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a

>    complaint is inapplicable to legal conclusions. Threadbare recitals of the
>    elements of a cause of action, supported by mere conclusory statements,
>    do not suffice. . .Rule 8 marks a notable and generous departure from the
>    hyper-technical, code-pleading regime of a prior era, but it does not
>    unlock the doors of discovery for a plaintiff armed with nothing more
>    than conclusions. Second, only a complaint that states a plausible claim
>    for relief survives a motion to dismiss. . .Determining whether a
>    complaint states a plausible claim for relief will, as the Court of Appeals
>    observed, be a context-specific task that requires the reviewing court to
>    draw on its judicial experience and common sense. But where the
>    wellpleaded facts do not permit the court to infer more than the mere
>    possibility of misconduct, the complaint has alleged - but it has not
>    "show[n]" - "that the pleader is entitled to relief."

*Id.* at 678-79 (internal citations omitted).

The elements of a First Amendment retaliation claim are well known: (1) Plaintiff was engaged in constitutionally protected conduct, (2) Plaintiff suffered adverse action which would deter a person of "ordinary firmness" from continuing to engage in such protected conduct, and (3) there exists a causal connection between the protected conduct and the adverse action - in other words, the adverse action was motivated at least in part by Plaintiff's protected conduct. *See Thomas v. Eby*, 481 F.3d 434, 440 (6th Cir. 2007) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999)).

With respect to causation, courts recognize that retaliation is easy to allege and "is often very difficult to prove with direct evidence." *King v. Zamiara*, 680 F.3d 686, 695 (6th Cir. 2012). Nonetheless, "bare allegations of malice" are insufficient to state a constitutional claim, as Plaintiff must instead establish "that his protected conduct was a motivating factor" behind the allegedly retaliatory action taken. *Thaddeus-X*, 175 F.3d at 399 (citations omitted). Conclusory allegations of retaliatory motive are insufficient, however. *See Skinner v. Bolden*, 89 Fed. Appx. 579, 579-80 (6th Cir., Mar. 12, 2004). Instead, Plaintiff must, at a minimum, allege a chronology of events from which retaliation can

plausibly be inferred. *See Desmone v. Adams*, 1998 WL 702342 at *3 (6th Cir., Sep. 23, 1998); *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004).

In his amended complaint, Plaintiff merely alleges the legal conclusion that Defendant acted for retaliatory reasons. Plaintiff alleges that Defendant Grahn refused his request for a diabetic snack bag and cancelled his glucometer in retaliation for grievances which Plaintiff filed against Grahn. Plaintiff has failed, however, to indicate when the grievances in question were filed, what the grievances concerned, or how such were resolved. In the absence of allegations concerning such matters, Plaintiff's allegations fall short of the aforementioned standard. Simply put, Plaintiff has failed to allege a chronology of events from which retaliation can plausibly be inferred. Accordingly, the undersigned recommends that Plaintiff's retaliation claims be dismissed for failure to state a claim. The undersigned further recommends, in the alternative, that Defendant Grahn's motion for summary judgment be granted as to Plaintiff's retaliation claims.

On summary judgment, the causation element is analyzed under the burden-shifting framework articulated in *Mount Healthy City School District Board of Education v. Doyle*, 429 U.S. 274 (1977). *See Thomas v. Eby*, 481 F.3d 434, 441-42 (6th Cir. 2007). Accordingly, even if Plaintiff demonstrates that his protected conduct "was a motivating factor in the defendant's action," Defendant is entitled to summary judgment if he demonstrates that he "would have taken the same action even without the protected activity." *Eby*, 481 F.3d at 441-42. Defendant Grahn asserts in his affidavit that his actions were based on his medical judgment and were not influenced by any grievances Plaintiff may have filed. (PageID.444 at ¶ 55). Plaintiff has submitted no evidence to the contrary or which suggests that Defendant Grahn's assertion is merely a pretext. Accordingly, the undersigned recommends, in the

alternative, that Defendant Grahn's motion for summary judgment be granted as to Plaintiff's retaliation claims.

**II.       Denial of Medical Treatment**

Plaintiff asserts that Defendant Grahn violated his Eighth Amendment right to be free from cruel and unusual punishment by: (1) failing to provide appropriate medical treatment; (2) refusing Plaintiff's request for a diabetic snack bag; and (3) cancelling Plaintiff's glucometer. As discussed below, the undersigned concludes that Defendant Grahn is entitled to summary judgment as to all these claims.

The Eighth Amendment's prohibition against cruel and unusual punishment applies not only to punishment imposed by the state, but also to deprivations which occur during imprisonment and are not part of the sentence imposed. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Estelle v. Gamble*, 429 U.S. 97, 101-02 (1976). Accordingly, the Eighth Amendment protects against the unnecessary and wanton infliction of pain, the existence of which is evidenced by the "deliberate indifference" to an inmate's "serious medical needs." *Estelle*, 429 U.S. at 104-06; *Napier v. Madison County, Kentucky*, 238 F.3d 739, 742 (6th Cir. 2001).

The analysis by which a defendant's conduct is evaluated consists of two-steps. First, the Court must determine, objectively, whether the alleged deprivation was sufficiently serious. A "serious medical need," sufficient to implicate the Eighth Amendment, is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008).

If the objective test is met, the Court must then determine whether the defendant possessed a sufficiently culpable state of mind:

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 837.

In other words, the plaintiff "must present evidence from which a trier of fact could conclude 'that the official was subjectively aware of the risk' and 'disregard[ed] that risk by failing to take reasonable measures to abate it.'" *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004) (citing *Farmer*, 511 U.S. at 829, 847).

To the extent, however, that the plaintiff simply disagrees with the treatment he received, or asserts that he received negligent care, the defendant is entitled to summary judgment. *See Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (citing *Estelle*, 429 U.S. at 105-06) ("[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner"); *Brown v. Kashyap*, 2000 WL 1679462 at *1 (6th Cir., Nov. 1, 2000) (citing *Estelle*, 429 U.S. at 106) ("allegations of medical malpractice or negligent diagnosis and treatment" do not implicate the Eighth Amendment); *Mingus v. Butler*, 591 F.3d 474, 480 (6th Cir. 2010) (to prevail on an Eighth Amendment denial of medical treatment claim, "the inmate must show more than negligence or the misdiagnosis of an ailment"); *Robbins v. Black*, 351 Fed. Appx. 58, 62 (6th Cir., Nov. 3, 2009) ("mere negligence or malpractice is insufficient to establish an Eighth Amendment violation").

In support of his motion for summary judgment, Defendant Grahn has submitted copies of Plaintiff's medical record as well as an affidavit. This evidence reveals the following. On five

occasions between January 2, 2012, and January 8, 2012, Plaintiff refused to take insulin in the mornings as directed. (PageID.231-35). On January 10, 2012, Plaintiff was examined by Dr. Jesus Neri regarding his failure to take his insulin as prescribed. (PageID.236-38). Plaintiff declared that he would decide "next week" if he would take his insulin twice a day as directed. (PageID.236). On January 12, 2012, Plaintiff submitted a request to receive a "snack bag." (PageID.239).

On at least eight occasions between January 14, 2012, and January 27, 2012, Plaintiff refused to take insulin in the mornings as prescribed. (PageID.240-57). On January 31, 2012, Plaintiff was examined by Physician's Assistant Buskirk regarding his refusal to take insulin in the morning. (PageID.258-59). Plaintiff stated "he refuses to take any type of insulin in the morning because we do not provide a morning snack bag." (PageID.258). Buskirk explained to Plaintiff that "he has the ability to eat breakfast and we are available to assist if there are any problems." (PageID.258). Plaintiff responded that he "is not going to take the medication." (PageID.258). Buskirk explained to Plaintiff "that his diabetes is not controlled on his current regimen." (PageID.258). Plaintiff responded that "he does not care and he is not going to take insulin in the [morning]." (PageID.258).

On February 22, 2012, Plaintiff was examined by Dr. Adam Kandulski. (PageID.260-64). Plaintiff reiterated that he was refusing to take insulin in the mornings because "he is not getting his snack bag correctly." (PageID.260). Plaintiff refused to bring his glucometer to the appointment as instructed. (PageID.260). Plaintiff reported that he experienced a hypoglycemic episode two mornings ago which the doctor responded "does not appear accurate as [Plaintiff] has not taken any insulin in 5 days." (PageID.260). The doctor informed Plaintiff that he would not be provided with an evening snack bag if he continued to refuse to take his insulin as directed. (PageID.260). Plaintiff responded that "he will get the issue taken care of on his own." (PageID.260).

On May 21, 2012, Plaintiff was examined by Physician's Assistant Buskirk. (PageID.271-72). Plaintiff requested that he receive his snack bags because he was experiencing hypoglycemia "every morning and every night." (PageID.271). Buskirk noted that there was no indication that Plaintiff was experiencing hypoglycemia, thus there was no medical reason to supply Plaintiff with a snack bag. (PageID.271). Buskirk instructed Plaintiff to come to health care in the mornings and evenings so that his blood sugar could be properly checked. (PageID.271). Plaintiff indicated that he was "not in agreement" with Buskirk's decision and "left the appt." (PageID.271). Later that day, Plaintiff informed health services that he would no longer take his evening insulin dose. (PageID.274). On May 23, 2012, Plaintiff refused to have his blood sugar tested by health services. (PageID.273). Treatment notes dated July 2, 2012, indicate that Plaintiff was not having his blood sugar checked by health services in the mornings as instructed. (PageID.276).

On August 9, 2012, Plaintiff submitted a request to health services that he "not have any contact with" Physician's Assistant Buskirk. (PageID.280). Plaintiff stated, "I fear for my life and safety in his presence." (PageID.280). Plaintiff was informed that "patients are not allowed to pick their providers." (PageID.280). On August 28, 2012, Plaintiff once again began receiving a snack bag. (PageID.284).

On three occasions between September 13, 2012, and September 19, 2012, Plaintiff refused to take his evening insulin dosage. (PageID.293-95). On September 21, 2012, Plaintiff was examined by Defendant Grahn. (PageID.296-97). Grahn reiterated to Plaintiff that he needed to receive insulin twice daily, but Plaintiff refused. (PageID.296-97). Plaintiff asserted that the medication he was prescribed was causing him to experience hypoglycemia. (PageID.437 at ¶ 30). Defendant Grahn

assured Plaintiff that the medication in question "does not cause hypoglycemia," but Plaintiff refused to believe Defendant Grahn. (PageID.437 at ¶ 30).

Treatment notes dated September 29, 2012, indicate that Plaintiff was continuing to refuse to take insulin in the mornings. (PageID.300). Plaintiff also refused to provide health services with his accu-check readings. (PageID.300). Treatment notes dated October 17, 2012, indicate that Plaintiff refused to take his evening insulin dose. (PageID.304).

On October 23, 2012, Plaintiff reported to health services. (PageID.307). Plaintiff reported that based on his own testing his blood sugar was 87. (PageID.307). Testing at health services, however, revealed that Plaintiff's blood sugar was 254. (PageID.307). Treatment notes dated October 24, 2012, indicate that Plaintiff refused to check his blood sugar and refused to take his evening dose of insulin. (PageID.308). On November 4, 2012, Plaintiff refused to take his evening dose of insulin. (PageID.312). Treatment notes dated November 16, 2012, indicate that Plaintiff "has refused insulin for three days." (PageID.313). Plaintiff again refused insulin on November 19, 2012. (PageID.314).

Treatment notes dated November 26, 2012, indicate that Plaintiff was continuing to refuse insulin and was also refusing to provide his accu-check meter when requesting honey packets. (PageID.316). Plaintiff was again instructed that if he required honey packets to treat an episode of low blood sugar, he must provide his glucometer so that his blood sugar reading could be confirmed. (PageID.318-19). On November 29, 2012, Plaintiff "refused to have labs drawn." (PageID.321).

Treatment notes dated, November 30, 2012, indicate that Plaintiff "has refused his morning blood sugar checks and insulin for 5 days straight." (PageID.322). Treatment notes dated December 3, 2012, indicate that Plaintiff "took his dose of insulin on [November 30, 2012], but has refused all doses since." (PageID.323). On December 6, 2012, Plaintiff "refused again to let health care

draw his blood." (PageID.324). Treatment notes dated December 10, 2012, indicate that Plaintiff "continues to refuse his [morning] insulin and is only taking his [evening] dose on an average of 2-3 times a week." (PageID.325). On December 13, 2012, Defendant Grahn attempted to meet with Plaintiff to "discuss his refusal to comply with his treatment protocol and his request for a snack bag renewal." (PageID.439 at ¶ 40). Plaintiff, however, "refused" to meet with Defendant. (PageID.439 at ¶ 40).

On January 9, 2013, Defendant Grahn noted that Plaintiff was "refusing all insulin for past 2 days." (PageID.337-38). On January 18, 2013, Defendant Grahn noted that Plaintiff's snack bag would not be renewed because it was "not medically indicated" in light of Plaintiff's refusal to take his insulin as prescribed. (PageID.339-40; PageID.440 at ¶ 43). Treatment notes dated January 26, 2013, indicate that Plaintiff "continues to refuse all morning insulin and most evening doses." (PageID.341). On January 28, 2013, Plaintiff refused his evening insulin after being informed that his snack bag would not be renewed. (PageID.342). Plaintiff responded by stating, "it's going to be a hell of a lawsuit." (PageID.342). The following day, Plaintiff was informed by a member of the nursing staff that his snack bag would not be renewed "as long as you are non compliant with treatment." (PageID.343). In treatment notes dated January 30, 2013, and January 31, 2013, Defendant Grahn reiterated that Plaintiff's request for a snack bag was "not medically indicated" in light of his refusal to take his insulin as prescribed. (PageID.344-47).

On January 31, 2013, Defendant Grahn "discussed [Plaintiff's] treatment with the regional office." (PageID.440 at ¶ 45). With respect to the testing of Plaintiff's glucose level, Defendant asserts the following:

> [Plaintiff's] record shows that he would bring readings from his glucose
> monitor to the clinic in the hopes of getting snack bags and honey. When

> his glucose level was checked at the clinic, the glucose levels would be higher than the self-reported levels. In my opinion, having [Plaintiff's] blood sugar levels checked by a medical professional at the clinic would give us a much more accurate result and greatly reduce the ability of [Plaintiff] to manipulate the glucose reading. A patient can manipulate the glucose reading of an accucheck when they perform the test themselves in various ways, including diluting their blood with water. As a medical provider, it raises a red flag to me when an inmate insists that you rely on his glucose monitor reading rather than allowing medical professionals to check his glucose levels. It is also concerning when an inmate's self-reported glucose levels do not match up with the gluscose levels when medical professionals do the check. These are signs that an inmate might be manipulating his glucose readings.

(PageID.440-41 at ¶ 45).

Following this consultation, it was determined that "due to [Plaintiff's] noncompliance with treatment, we would discontinue [Plaintiff's] accucheck glucose monitor, in the hope that [Plaintiff] would have his blood sugar tested by medical personnel at the clinic." (PageID.440 at ¶ 45).

Treatment notes dated February 1, 2013, indicate that due to Plaintiff's "non-compliance with the ordered treatment plan," Plaintiff was directed to surrender his personal glucometer and instead have his blood sugar checked by health services. (PageID.348). Treatment notes dated February 25, 2013, indicate that Plaintiff "shows up to insulin lines but refuses insulin - he also refuses to check his blood sugar." (PageID.349). On March 12, 2013, Plaintiff reiterated that he would "continue non-compliance" unless he was "consulted by a medical physician." (PageID.351). Treatment notes dated March 13, 2013, indicate that Plaintiff "refused" to have lab work performed. (PageID.352). It was further noted that Plaintiff "has been refusing insulin and accuchecks as well." (PageID.352).

On March 16, 2013, Plaintiff requested that he be examined by a physician regarding foot pain he was experiencing. (PageID.355-56). Plaintiff was reminded that Defendant Grahn was his "primary medical provider" and "he would decide if you need to see the doctor or not." (PageID.357).

On March 20, 2013, Plaintiff was examined by Defendant Grahn. (PageID.358-59). Plaintiff "proceeded to demand his accu check, athletic shoes and snack bag back." (PageID.358). Apparently displeased that a particular nurse was present for the examination, Plaintiff "got up and terminated the visit" before an examination could be performed. (PageID.358). Defendant Grahn nevertheless observed that Plaintiff exhibited "normal" fine motor skills, "intact" coordination, "intact" balance and gait, and "no motor weakness." (PageID.359). On March 26, 2013, Plaintiff transferred to another correctional facility. (PageID.360).

On April 4, 2013, Plaintiff was examined by Physician's Assistant Adrianne Neff. (PageID.361-62). When asked why he was taking insulin only in the evening, Plaintiff responded that "he has never been told he should take it twice daily." (PageID.361). Neff observed that "the briefest chart review proves [Plaintiff's assertion] to be patently untrue." (PageID.361). Plaintiff then "demanded" to know how the burning pain in his lower extremities would be treated to which Neff informed Plaintiff that "the single most important thing he could do to avoid this and other complications of diabetes was to control his blood sugar." (PageID.361). Plaintiff "became angry" when he learned that Neff "had no plans to make any major changes in his management today, other than his insulin orders." (PageID.361). Plaintiff then "left the clinic prior to being examined." (PageID.361).

Plaintiff has submitted a three page "sworn declaration" in response to the present motion. (PageID.403-05). Plaintiff asserts that he "repeatedly" requested that he receive treatment from Defendant Grahn to treat the pain in his lower extremities. (PageID.404 at ¶ 10). Plaintiff concedes that he refused to take his insulin as directed, but asserts that it was merely a ploy to get Defendant to meet with him. (PageID.404 at ¶ 11).

It is abundantly clear from the evidence detailed above that Plaintiff was never denied treatment by Defendant Grahn or anybody else. Rather, Plaintiff's care providers prescribed treatment for Plaintiff, namely taking insulin twice daily, that would best address Plaintiff's diabetes and, more specifically, the concerns Plaintiff was experiencing with his lower extremities. Plaintiff's conscious and repeated refusal to comply with his care providers' treatment instructions does not constitute deliberate indifference by Plaintiff's care providers. Simply stated, the only person who was deliberately indifferent to Plaintiff's medical needs was Plaintiff himself. Defendant Grahn provided Plaintiff with medical care. Plaintiff's disagreement with and conscious refusal to comply with such simply fails to implicate the Eighth Amendment. Likewise, Defendant's decisions to take Plaintiff's personal glucometer and to refuse Plaintiff's snack bag requests were reasonable decisions in light of Plaintiff's repeated refusal to comply with his care provider's treatment instructions. While Plaintiff may disagree with Defendant Grahn's medical judgment or feel that such constitutes negligence or malpractice, such does not implicate the Eighth Amendment. Accordingly, the undersigned recommends that Defendant Grahn's motion for summary judgment be granted as to Plaintiff's Eighth Amendment claims.

## CONCLUSION

For the reasons articulated herein, the undersigned recommends that <u>Defendant's Motion for Summary Judgment</u>, (dkt. #32), be **granted** and this action **terminated**. The undersigned further recommends that appeal of this matter would not be taken in good faith. *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997); 28 U.S.C. § 1915(a)(3).

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file

objections within the specified time waives the right to appeal the District Court's order.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

                                       Respectfully submitted,


Date:  March 22, 2016                                /s/ Ellen S. Carmody
                                                                ELLEN S. CARMODY
                                                                United States Magistrate Judge